Linda H. MOHR, Plaintiff,

v.

CHICAGO SCHOOL REFORM BOARD OF TRUSTEES OF THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, a body politic and corporate, Alfred Clark, Lynn St. James, and Marie D. Jernigan, Defendants.

No. 97 C 6133.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 9, 1998.

Edward R. Theobald, Law Office of Edward R. Theobald, Chicago, IL, for Plaintiff.

Kathleen Marie Gibbons, Marilyn F. Johnson, Board of Educ. of City of Chicago, Law Dept., Chicago, Taryn Springs, Bd. of Educ. of City of Chicago, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Linda Mohr, brought suit against the Chicago School Reform Board of Trustees of the Board of Education of the City of Chicago (the "Board") and its employees, Alfred Clark, Lynn St. James, and Marie Jernigan. In the complaint Ms. Mohr alleges race discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Defendants move to strike or dismiss Counts II, III, and IV of Ms. Mohr's complaint. For the reasons set forth below, the motion is denied in part and granted in part.

### Background

Ms. Mohr is a Caucasian/white certified teacher employed by the Board. From 1978 to 1995, she was a permanent regularly assigned tenured teacher at Austin High School ("Austin")—one of the Chicago public schools managed by the Board. She was also Chairperson of the Art Department at Austin from 1988 to 1994 and Chairperson of the Fine Arts Department from 1994 until September 1, 1995. During her tenure at Austin, she consistently received superior performance evaluations.

The individual defendants are all African American and are employed by the Board. Mr. Clark is the principal at Austin, Ms. St. James is the chief education officer for the Board, and Ms. Jernigan is the remediation coordinator at Austin. Ms. Mohr brings her Section 1981 and Section 1983 claims against the Board and Mr. Clark, Ms. St. James, and Ms. Jernigan in their individual and official capacities.[1]

Ms. Mohr alleges that on September 1, 1995, Mr. Clark, Ms. St. James, and Ms. Jernigan removed 14 white teachers, including Ms. Mohr, from their positions at Austin because they were white. They delivered a letter to Ms. Mohr stating that her services were no longer needed at Austin and demoted her from her permanent, tenured position to a non-tenured, substitute teacher position. They further ordered the police to escort Ms. Mohr off school premises and prohibited her from taking her personal property. Ms. Mohr alleges that these actions were taken pursuant to a widespread Board policy and custom of removing teachers because of their race. She says that Ms. St. James stated that the goal was to "turn over 1/3 of the staff to reculture the school." Black teachers with less seniority, qualifications, and professional abilities were not removed or demoted.[2]

---

1. Nothing is added by suing Mr. Clark, Ms. St. James, and Ms. Jernigan in their official capacities since the Board is the party liable for their actions in their official capacities. *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir.1987).

2. Approximately 70% of the teachers at Austin were African American.

*Motion to Dismiss*

### A. Section 1981 Claims

The defendants first claim that Ms. Mohr inappropriately combined two claims under 42 U.S.C. §§ 1981 and 1983 in Count II of the complaint. Count II, however, does not bring two separate claims but rather asserts a Section 1981 claim by and through Section 1983. In *Jett v. Dallas Independent School District*, 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Supreme Court held that Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Ms. Mohr followed the *Jett* requirement and brought her Section 1981 claim against the Board through Section 1983.

■ The defendants further claim that Count IV's Section 1981 claim is duplicative of the Section 1981 claim in Count II. The claims against the Board are duplicative, largely due to the disagreement over the impact of the 1991 amendment to Section 1981.[3] The Ninth Circuit and one court in this district found that Congress' amendment overruled the *Jett* holding that required a plaintiff to bring a Section 1981 claim through Section 1983. A plaintiff could bring a direct cause of action against state actors under Section 1981. *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir.1996); *Ford v. City of Rockford*, 1992 WL 309603, *2 (N.D.Ill.1992). On the other hand, the Fourth Circuit and the Eleventh Circuit hold that the amended Section 1981 does not overrule the *Jett* holding. *Dennis v. County of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir.1995); *Johnson v. City of Fort Lauderdale*, 903 F.Supp. 1520, 1522–23 (S.D.Fla.1995), *aff'd*, 114 F.3d 1089 (11th Cir.1997). Since the Seventh Circuit has not addressed this issue, Ms. Mohr filed both Counts II and IV to ensure that she pled a viable Section 1981 claim against the Board. Ms. Mohr, however, cannot bring two counts alleging the same claims against the Board. Until the law is settled, it is prudent for Ms.

Mohr to bring her Section 1981 claim against the Board through Section 1983 and strike the Board from Count IV. Ms. Mohr, however, may still plead the Section 1981 claim in Count IV against the individual defendants in their individual capacities.

■ Defendants next assert that Ms. Mohr did not state a violation of Section 1981 because she did not satisfy the "new and distinct relation" test, the contract test, the outsider test, or the job requirements test. The Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 185, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), held that Section 1981 only applied to new and distinct relationships. The Seventh Circuit developed the contract test, the outsider test, and the job requirements test to determine when a new and distinct relationship exists. *Harper v. Godfrey Co.*, 45 F.3d 143, 146 (7th Cir.1995). *Patterson* and its progeny, however, were subsequently overruled by 42 U.S.C. § 1981(b). *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 933 (1993), *cert. denied*, 511 U.S. 1071, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994). Section 1981 now covers "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

■ Finally, defendants argue that Ms. Mohr does not sufficiently allege a violation of Section 1981. To state a Section 1981 claim against the individual defendants, Ms. Mohr must allege: (1) that she is a member of a racial minority, (2) that defendants intended to discriminate on the basis of race, and (3) that the discrimination concerned one or more of the activities enumerated in Section 1981. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.1996). To state a Section 1981 claim against the Board, Ms. Mohr must further allege that the individual defendants acted under color of state law pursuant to the Board's custom or policy.[4] *Jett*, 491 U.S. at 735–36. Ms. Mohr has

---

**3.** "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

**4.** This requirement ensures that the Board is liable for its policies. It does not hold the Board liable under a respondeat superior theory of liability.

sufficiently pled all the above elements.[5]

### B. Section 1983 Claims

Defendants claim that Ms. Mohr did not sufficiently plead a claim under Section 1983. They state (1) that she did not identify which constitutional right was violated, (2) that she made boilerplate policy allegations, (3) that one incident of discrimination is insufficient to establish a policy, (4) that she attempts improperly to hold the Board liable under the doctrine of respondeat superior, (5) that the allegations against the individual defendants are conclusory, and (6) that there are no facts to support her fourteenth amendment claim. These contentions are without merit.

First, Ms. Mohr alleged that her constitutional right to equal protection was violated. Second, her policy allegations were not boilerplate. She stated that the Board's widespread practice of assigning and removing teachers because of their race constituted a custom or policy. Third, Ms. Mohr did not claim that her demotion alone constituted a policy, but that the Board's widespread practice before 1995 as well as the demotion of the 14 white teachers on September 1, 1995 constituted a policy. Fourth, Ms. Mohr does not seek to hold the Board liable under the doctrine of respondeat superior, but rather seeks to hold the Board accountable for its policies as implemented by the individual defendants. Fifth, her allegations against the individual defendants are anything but conclusory. She identified the statements and actions taken by the individual defendants which deprived her of her constitutional and statutory rights. Finally, she did allege facts to support her equal protection claim. She stated that she was demoted because she was white even though African American teachers with less experience were not fired and were even hired to replace her.

### C. Statute of Limitations

The statute of limitations for Section 1981 and Section 1983 claims is the state statute of limitations for personal injury actions: two years in Illinois. *Smith v. City of Chicago Heights,* 951 F.2d 834, 839 (7th Cir. 1992); 735 ILCS 5/13–202. The statute of limitations period for Ms. Mohr's Section 1981 and 1983 claims began when she discovered or should have discovered that her statutory or constitutional rights were violated. *Wilson v. Giesen,* 956 F.2d 738, 744 (7th Cir.1992). Ms. Mohr discovered that her rights were violated on September 1, 1995, when the defendants demoted her from her tenured teaching position at Austin. Since Ms. Mohr filed her complaint on August 29, 1997, it is within the limitations period.

### D. Punitive Damages

The defendants claim that Ms. Mohr inappropriately seeks punitive damages against the Board. A reading of the complaint reveals that Ms. Mohr only seeks punitive damages against the three individual defendants.

### Conclusion

Defendants' motion to dismiss Counts II, III and IV in their entirety is denied. The motion to strike the Board from Count IV is granted.

---

5. Ms. Mohr stated that she was white when 70% of the teachers assigned to Austin were African American; that defendants intended to discriminate against her on the basis of her race when they demoted her and other white teachers to "turn over 1/3 of the staff to reculture the school"; that the discrimination affected her enjoyment of the benefits, privileges, terms, and conditions of her employment in that she was no longer tenured, had limited promotion opportunities, and received less salary; and that the individual defendants acted under color of state law pursuant to the Board's widespread custom and practice of assigning and removing teachers because of their race.