**In re William MARTIN, Sr., Debtor.**

**BAY STATE MILLING COMPANY, Plaintiff,**

v.

**William MARTIN, Sr., Diana June Franchi, and Betty Lou Doty, Defendants.**

Bankruptcy No. 89 B 09796.
Adv. No. 91 A 00418.

United States Bankruptcy Court, N.D. Illinois, E.D.

March 30, 1992.

---

. Bernard M. Kaplan, Ruben Kaplan & Rosen, Skokie, Ill., Saul R. Leibowitz, Chicago, Ill., for William Martin, Sr.

David Neff, Jenner & Block, Chicago, Ill., for Official Creditors Committee.

Karen Moore, Office of the U.S. Trustee, Chicago, Ill.

von Briesen & Purtell, Milwaukee, Wis.

Paul M. Bauch, Bell Boyd & Lloyd, Chicago, Ill., for Bay State Milling Co.

David A. Kallick, Hurley & Kallick, Ltd., Deerfield, Ill., for LaSalle Bank Northbrook.

Jan Van Duzer, Mayer Brown & Platt, Chicago, Ill.

## MEMORANDUM OPINION ON DEBTOR'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Bay State Milling Company ("Bay State") is a creditor in the related Chapter 7 bankruptcy proceeding filed by William Martin Sr. It filed this two-count Adversary complaint on behalf of the bankruptcy estate to set aside the transfer of certain stock to the debtor's children as a fraudulent conveyance. Plaintiff alleges fraud in fact and fraud in law under Ill.Rev.Stat. ch. 59, ¶ 4. The debtor-defendant William Martin, Sr. moved for summary judgment, asserting that the causes of action are barred by the statute of limitations and laches. For reasons set forth herein, that motion is denied.

In addition to moving papers and briefs, Debtor filed an affidavit and both parties filed statements of uncontested fact as required by Local District Rule 12(m) and (n) which has been adopted as a rule of this Bankruptcy Court.

## UNCONTESTED FACTS

Martin presently owns 45% of the outstanding shares in Country Maid Bakery Corp, an Illinois corporation which wholesales and retails bakery goods ("Country Maid"). He is also president of Country Maid. Martin's wife June owns 40% of the outstanding shares of Country Maid, and his three children each own 5% of the shares.

Until approximately June 1, 1985, Martin owned 60% of the Country Maid stock. On or about June 5, 1985, he assigned and transferred to each of his three children 5% of the Country Maid stock, thereby reducing his stock ownership to a minority interest. The transfer was evidenced by an instrument dated June 1, 1985.

Martin also previously owned 50% of the outstanding shares of National Flour Company of Wisconsin ("National"), which was in the business of wholesale flour distribution. The remaining 50% of the shares in National were owned by Phillip Sylvester ("Sylvester"). On February 1, 1985 Martin sold his shares in National to Sylvester. On August 10, 1983, prior to the latter sale of shares, Martin and Sylvester executed guarantees of National's obligations to Bay State. National subsequently accrued significant debts to Bay State for goods shipped on open account.

In August of 1985, Bay State filed a civil action in the United States District Court for the Eastern District of Wisconsin, seeking judgment against Martin and Sylvester on the guarantees, and against National on its debt. In this same action, National and Sylvester filed cross-claims against Martin for fraud and conversion.

Partial summary judgment was entered against Mr. Martin, in favor of Bay State on the National guarantee. A jury trial was held to determine Bay State's damages and the cross-claims of Sylvester and National. The jury returned verdicts against Martin in favor of Bay State in the amount of $447,528.36; in favor of Sylvester in the amount of $50,000 compensatory damages and $70,025.79 in punitive damages; and in favor of National in the amount of $25,998.28. On August 17, 1988 the District Court entered judgment against Martin on that jury verdict. On April 25, 1989, Bay State filed a Verified Petition for Registration of Foreign Judgment in the Circuit Court of Cook County, Illinois.

Martin filed his voluntary petition under Chapter 11 of the Bankruptcy Code on June 13, 1989, a proceeding later converted to one under Chapter 7. With agreement of the Chapter 7 trustee, Bay State was authorized by order entered April 3, 1991, to bring this action on behalf of the estate to set aside Martin's transfer of Country Maid stock to his children as a fraudulent conveyance pursuant to § 544(b) and Ill. Rev.Stat. ch. 59, ¶ 4. Bay State filed the present Adversary proceeding on April 25, 1991.

## JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred here under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

## STANDARDS FOR SUMMARY JUDGMENT

Rule 56, F.R.Civ.P., (Rule 7056 F.R.Bankr.P.) provides that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show that there is no genuine issue of material fact. The moving party bears the burden of showing that there is no issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the movant has met this burden, the evidence is viewed in a light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The moving party bears the initial responsibility of showing the court that there is no genuine issue of material fact by identifying the portions of the pleadings, depositions, affidavits, and other material relied on in its motion. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once the moving party has made a prima facie case that it is entitled to summary judgment, the party opposing the motion may not rest on the allegations or denials in the pleadings, but must, by affidavit or otherwise, show that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The existence of an issue of material fact is sufficient to deny the motion only if the disputed fact determines the outcome of the case under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

In addition, Local District Rule 12(m) requires the moving party to file a detailed statement of material facts as to which there is no genuine issue. The party op-

posing the motion is required by Local District Rule 12(n) to file a response to the movant's statement, setting forth any facts which require denial of summary judgment and identifying affidavits and other supporting material relied upon in support of the response. Failure to file a response to the statement of facts is deemed an admission of all reasonable facts set forth in the movant's statement and waives, for purposes of the motion, the adverse party's opportunity to contest the facts in the statement. *Harbin v. Sun Life Assur. Co.*, 710 F.Supp. 1167, 1168 (N.D.Ill.1989).

## DISCUSSION

This Adversary proceeding was commenced by Bay State under section 544(b) of the Bankruptcy Code, to set aside the transfer of stock to the Martin children as a fraudulent conveyance. Section 544 authorizes the trustee to bring a fraudulent conveyance action under applicable state law.[1] Martin contends that this action is barred by the four year statute of limitations in § 110(b) of the Uniform Fraudulent Transfer Act ("UFTA"), Ill.Rev.Stat., ch. 59, ¶ 101 et. seq., and also by the five-year statute of limitations which governed causes of action brought under the predecessor to UFTA, Ill.Rev.Stat. ch. 59, ¶ 4.

### 1. The five year period of limitations applies

Initially, Martin argues that this action is governed by UFTA and its four-year statute of limitations. The alleged fraudulent conveyance occurred on June 1, 1985. Illinois Revised Statutes, ch. 59, ¶ 4 was in effect at that time. Under that provision, causes of action were governed by the general five year limitations period provided in Ill.Rev.Stat. 110, § 13–205. Effective January 1, 1990, the Illinois legislature adopted UFTA, thereby superseding Ill. Rev.Stat. ch. 59, ¶ 4. Section 110(b) of UFTA provides that an action must be brought within four years after a transfer was made.

This Court determined in a prior ruling in the case that ¶ 4 of Chapter 59 of the Illinois Revised Statutes governed Plaintiff's cause of action, and the UFTA should not be applied retroactively. *In re Martin*, 113 B.R. 949 (Bankr.N.D.Ill.1990). In reaching that determination, this Court recognized the presumption against retroactive application of a statute. A statute should only be given prospective application unless there is a clear and unequivocal statement by the legislature to the contrary. *Id.* at 956 n. 2. Despite this decision, Martin continues to argue that UFTA and its four-year statute of limitations governs this case and that Plaintiff's cause of action is barred by the statute of limitations.

Mr. Martin argues that adoption of UFTA was within an exception to the general rule on statutory construction, one which allows retroactive application of a statute. Martin classifies UFTA as a "special remedial statute" and argues that, Ill. Rev.Stat. ch. 59, ¶ 4 was repealed by a "special remedial statute" without a savings clause, therefore all pending actions under the former act were terminated. Martin did not cite any authority for his position that these sections are "special remedial statutes." Moreover Martin neither defines a "special remedial statute" nor shows how the former provision governing fraudulent conveyances or UFTA could be construed as such. Martin does, however, cite *Shelton v. City of Chicago*, 42 Ill.2d 468, 248 N.E.2d 121 (1969), *cert. denied*, 396 U.S. 906, 90 S.Ct. 222, 24 L.Ed.2d 182 (1969), which held:

The unconditional repeal of a special remedial statute without a savings clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into

---

1. Despite a demand by Bay state upon Martin, Martin refused to bring the fraudulent conveyance action. Consequently, Bay State moved for an order appointing it to act on behalf of the estate. This Court initially denied the motion on April 26, 1990. *In re Martin*, 113 B.R. 949 (Bankr.N.D.Ill.1990). On appeal, the District Court vacated that order and remanded the case for further proceedings. *In re Martin*, 124 B.R. 69 (N.D.Ill.1991). On April 3, 1991, with agreement of the Chapter 7 Trustee, this Court entered an order authorizing Bay State to bring this action on behalf of the estate.

effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal.

Martin concludes that the repeal of Ill.Rev. Stat. ch. 59, ¶ 4 by UFTA terminated all actions pending thereunder, and therefore any action for fraudulent conveyance must be governed by UFTA, which contains a four year statute of limitations.

If no Illinois court had ruled on this subject, then this Court would not retroactively apply UFTA. A remedial statute provides remedy to an injured person that would not otherwise be available. *McDonald's Corp. v. Levine*, 108 Ill.App.3d 732, 64 Ill.Dec. 224, 439 N.E.2d 475 (1982). Illinois Revised Statutes and UFTA are not remedial statutes because they did not create a remedy that would not otherwise be available, but codified a right that was created by the English common law. A special statute confers a special benefit on a particular person or group. *Chicago Nat. League Ball Club, Inc. v. Thompson*, 108 Ill.2d 357, 91 Ill.Dec. 610, 483 N.E.2d 1245 (1985). These sections are not "special statutes", as they do not confer a benefit on any particular individual or group, but apply to society as a whole. Consequently, Debtor is not correct in arguing that UFTA should be applied retroactively. See *In re Lyons*, 130 B.R. 272, 278 (Bankr. N.D.Ill.1991) (UFTA should not be applied retroactively, and alleged fraudulent transfer occurring in 1986 would be governed by Ill.Rev.Stat. ch. 59, ¶ 4, the statutory provision in effect at that time).

However, an Illinois appellate court has recently considered whether UFTA should be applied retroactively. In *Cannon v. Whitman Corp.*, 212 Ill.App.3d 79, 155 Ill. Dec. 503, 569 N.E.2d 1114 (5th Dist.1991), the court was reviewing a trial court's grant of injunctive relief in a fraudulent conveyance action. UFTA provides for injunctive relief, Ill.Rev.Stat. ch. 59, § 108(a)(3)(A), while its predecessor is silent on this issue. The appellate court affirmed the judgment and held, "the [UFTA] is remedial in nature and thus can be given retroactive effect.... justice would be served by applying [UFTA] retro-

actively." *Id.* 155 Ill.Dec. at 507, 569 N.E.2d at 1118.

*Cannon* has different facts from the present case, since Bay State is seeking to set aside the alleged fraudulent conveyances and is not seeking injunctive relief. Moreover, it is by no means clear that the Illinois Supreme Court will adopt the view expressed in *Cannon* or apply that decision to facts similar to those in this case.

■ However, we need not resolve the effect of *Cannon*. There has been a prior decision in this case on this very issue. The "law of the case" doctrine mandates that Ill.Rev.Stat. ch. 59, ¶ 4, be applied to this action. Under this doctrine, a decision made at one stage of a proceeding should continue to govern the same issues in subsequent stages of the same proceeding. *Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 605 (7th Cir.1987). The doctrine applies to issues that "were decided either expressly or by necessary implication." *Parts and Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 232 (7th Cir. 1988) *cert. denied*, 493 U.S. 847, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989). A court should apply the doctrine unless there are unusual or compelling circumstances which mandate otherwise. *Electric Motors* at 231. Such circumstances include "(1) substantial new evidence introduced after the first review, (2) a decision of the Supreme Court after the first review that is inconsistent with the decision on that review, and (3) a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous." *Id.* at 231.

In the present case, this Court earlier determined that Ill.Rev.Stat. ch. 59, ¶ 4 governs this proceeding. Martin did not challenge this determination, and on appeal the District Court applied Ill.Rev.Stat. ch. 59, ¶ 4. *In re Martin*, 124 B.R. 69 (N.D.Ill. 1991). It was necessary for the District Court to decide which statute governed this action in order to address the remaining issues there on appeal, including the proper allocation of the burden of proof in a proceeding under Ill.Rev.Stat. ch. 59, ¶ 4. Martin has failed to show any of the cir-

cumstances which would render the "law of the case" doctrine inapplicable here. While the Court gives deference to decisions of Illinois appellate courts on questions of Illinois law, *Cannon* was not an Illinois Supreme Court case, and its ruling may not even apply to this case. There are no circumstances which make the "law of the case" doctrine inapplicable here. Therefore, the prior decisions by this Court and the District Court that Ill.Rev.Stat. ch. 59, ¶ 4 govern this action will not be modified.

### 2. The "discovery rule"

Martin next argues that, even if the cause of action is governed by the five year statute of limitations, the action is barred because the adversary complaint was not filed within five years from the date of the transfer. Under Illinois law, an action must be brought within five years after the cause of action accrued. Ill.Rev.Stat. ch. 110, § 13–205. In some instances, Illinois courts apply the "discovery rule", which allows a cause of action to accrue when the plaintiff knew or should have known of the right to sue. *Pratt v. Sears Roebuck & Co.*, 71 Ill.App.3d 825, 28 Ill.Dec. 304, 307, 390 N.E.2d 471, 474 (1st Dist.1979). Martin contends that the discovery rule is not available in this instance because there must be an affirmative concealment of the fraud, not mere silence.

This argument confuses the "discovery rule" with fraudulent concealment, which is an independent basis for tolling a statute of limitations pursuant to Ill.Rev.Stat. ch. 110, § 13–215. *Pratt*, 28 Ill.Dec. at 308, 390 N.E.2d at 475. Consequently, it is not necessary for Bay State to prove affirmative concealment, and the discovery rule may be available to extend the time for bringing this fraudulent conveyance action. The cause of action for fraudulent conveyance would normally have accrued on the date the transfer occurred. By applying the discovery rule, the cause of action would not have accrued until Bay State knew or should have known of the stock transfer. The determination of when Bay State knew or should have known of the transfer is a question of fact, not disposed of by the moving papers, thereby warranting denial of Martin's motion for summary judgment on that ground alone. However, because there are additional grounds for denying the instant motion, as discussed below, it is presently unnecessary to base the ruling on this ground.

### 3. The action was timely filed

■ Bay State's cause of action is not barred by the statute of limitations, even absent application of the discovery rule. There is a two-part analysis for determining whether an action brought under 11 U.S.C. § 544(b) is timely. The applicable state statute of limitations is only relevant to the first part of the test, which requires the action to be maintainable under the state statute of limitations as of the commencement of the bankruptcy proceeding. Once the bankruptcy petition is filed, 11 U.S.C. § 546 governs the time for bringing the action, and it requires the action be brought within the earlier of two years after the trustee is appointed or before the close of the bankruptcy proceeding. Under this analysis, it is immaterial if the state limitations period accrues during the pendency of the bankruptcy case. In support of this argument, Bay State relies on *In re Topcor, Inc.*, 132 B.R. 119 (Bankr.N.D.Tex. 1991) which held:

> [W]hen analyzing the timeliness of a § 544 avoidance action, the applicable state limitations periods are only relevant in analyzing whether the claim was time barred prior to the bankruptcy filing. If the fraudulent conveyance action was not time barred as of the petition date, then § 546(a) supersedes the state statute of limitations period since it provides a specified time within which a § 544 claim can be brought.

This analysis was also applied in *In re Dry Wall Supply, Inc.*, 111 B.R. 933 (D.Colo.1990), *In re Mahoney, Trocki & Assoc. Inc.*, 111 B.R. 914 (Bankr.S.D.Cal. 1990), *In re McGoldrick*, 117 B.R. 554 (Bankr.C.D.Cal.1990) and *In re Lyons*, 130 B.R. 272 (Bankr.N.D.Ill.1991). The court in *Mahoney* reasoned that, although an action under § 544(b) is based on state law, it is still created by the Bankruptcy Code, and

is not available to a trustee or debtor outside of bankruptcy. Therefore the action should be governed by the statute of limitation in the Bankruptcy Code once the bankruptcy petition is filled.[2]

Some courts considering this issue have determined that, because the bankruptcy court is applying state substantive law under § 544(b), only the state statute of limitations should apply. *In re Robbins*, 91 B.R. 879 (Bankr.W.D.Mo.1988), relying on *In re Josefik*, 72 B.R. 393 (Bankr.N.D.Ill. 1987). The court in *Robbins* considered § 546, but rejected its application to actions brought under § 544(b) without further discussion. The court in *Josefik* did not consider § 546, but relied on a Seventh Circuit case, *Suslick v. Rothschild Secur. Corp.*, 741 F.2d 1000 (7th Cir.1984). *Suslick* held that, because there is no general federal statute of limitations, the relevant state statute of limitations applies. However, *Suslick* did not involve the Bankruptcy Code; it was an action under § 17 of the Securities Act of 1933 and § 10 of the Securities Exchange Act of 1934. Neither of the latter provisions contain a specified statute of limitations, and consequently federal courts have applied the state statute of limitations analogous to those actions. The Bankruptcy Code, on the other hand, does provide a federal statute of limitations governing this action. Consequently, *Josefik's* reliance on *Suslick* was misplaced.[3]

Application of the two-step analysis to determine the time for bringing an action under § 544 is the better reasoned view.

It is consistent with the approach taken to fraudulent conveyance actions under § 548 and recognizes the express provision in § 546(a) that it applies to actions brought under § 544. This interpretation also follows the Congressional statutory scheme to provide order and predictability to the bankruptcy process. A trustee can depend on the two-year time period for utilizing avoiding powers, and focus during that period on whether an action is meritorious.

The bankruptcy petition in this case was filed on June 13, 1989, just over four years after the stock was transferred, within the five-year period of limitations. Therefore, as of the filing of the petition, the fraudulent conveyance action was maintainable under state law. The Chapter 7 trustee was appointed on August 2, 1990. Bay State filed this Adversary complaint within two years of appointment of the trustee, on April 25, 1991. Consequently, this action under § 544(b) was timely filed.

#### 4. The laches argument

■ Alternatively, Martin claims that the action is barred by laches. He contends that, because Bay State was aware of the stock transfer by May 19, 1986, but did not commence this adversary proceeding until April 25, 1991, the action is barred by laches. This time delay is the sole basis for Debtor's claim of laches.

Laches requires both undue delay and prejudice caused by the delay. *Smith v. City of Chicago*, 769 F.2d 408, 410 (7th Cir.1985). Debtor has failed to offer any

---

**2.** *Mahoney* also concluded that this interpretation would be consistent with a federal fraudulent conveyance action under 11 U.S.C. § 548. Section 548 provides an alternate fraudulent conveyance action for transfers made within one year of filing the petition. Despite the one year period of limitations within this section, § 548 actions are also governed by the two-year time limit in § 546. Therefore, there is also a two-part analysis of limitations under § 548: the transfer must have been made on or within one year before the bankruptcy petition was filed, 11 U.S.C. § 548(a); and the trustee must bring the action within two years after the trustee's appointment or before the close of the bankruptcy case, 11 U.S.C. § 546(a).

Martin argues that this action is also barred by § 548, because the transfer did not occur

within one year of the filing of the bankruptcy petition. However, Bay State does not allege a violation of the federal fraudulent conveyance action under § 548.

**3.** Judge Squires, in *Lyons*, 130 B.R. 272, also declined to follow *Josefik*, but on different grounds. He noted that the fraudulent conveyance action was brought by a creditor. Sections 544 and 546 were, therefore, not applicable because those sections are available only to bankruptcy trustees. *Id.* at 279. Although in the present case the fraudulent conveyance action has also been brought by a creditor, the creditor is standing in the shoes of the Trustee and acting on the estate's behalf pursuant to this Court's authorization.

evidence to show that he was prejudiced by the delay. Moreover, it was not demonstrated on this record that the delay in bringing this action was unreasonable. On November 14, 1989, Bay State made demand upon Martin to bring this action. On December 20, 1989, Bay State first moved for an order authorizing it to bring this action on behalf of the estate. Bay State did not obtain authorization until April 3, 1991. Most of the delay was attributable to Martin's refusal to initiate a fraudulent conveyance action and the need to appeal this Court's initial ruling. Bay State exercised due diligence in obtaining authorization to bring this action. The present record does not establish that the action is barred by laches, although that remains an issue for trial.

## CONCLUSION

For the foregoing reasons, Martin's motion for summary judgment, asserting that this action is barred by the statute of limitations and laches, is denied.